UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

UNITED STATES OF AMERICA,

-against-                                                                14 CR 810-07 (CM)

GANEENE GOODE,

　　　　　　　　　　　　Defendant.
-----------------------------------------------------------x

DECISION AND ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE

McMahon, C.J.:

　　Ganeene Goode was charged along with ten co-defendants with conspiring to distribute millions of oxycodone tablets, through sham clinics and pain management facilities in New York. Goode pleaded guilty and was sentenced to 48 months' imprisonment. She is presently serving her sentence at the Bureau of Prisons medical facility in Fort Worth Texas. Her projected release date, with good time credit, is July 1, 2021.

　　Before the Court is Goode's renewed motion for compassionate release, filed pursuant to 18 U.S.C. §3582(c)(1)(A)(i), as amended by the First Step Act ("FSA"), P.L. 115-391.[1]

　　Goode's renewed motion is granted.

　　<u>The Compassionate Release Statute</u>

　　A court may not modify a term of imprisonment once it has been imposed except pursuant to statute.

　　Until last December, a court could not modify a defendant's duly-imposed sentence on compassionate release grounds unless it received a motion from the Bureau of Prisons asking

---

[1] The Court assigned Bobbie C. Sternheim, Esq., from the court's CJA panel, to prepare Ms. Goode's renewed motion for compassionate release.

1

Copies mailed/faxed/handed to counsel on 8/10/2020

that the court consider such modification. 18 U.S.C.A. § 1B1.13. Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement) (Effective November 1, 2006; amended effective November 1, 2007; November 1, 2010; November 1, 2016; November 1, 2018).

In December 2018, as part of the First Step Act, Congress worked a change to that rule of long standing. A court may now consider a motion for compassionate release made by a defendant who has exhausted his administrative remedies by petitioning the Director of the BOP to make such a motion, assuming the Director fails to act on the inmate's request within thirty days:

> [T]he court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, *may reduce the term of imprisonment* . . .

18 U.S.C. § 3582(c)(1)(A) (emphasis added).

The court may modify a sentence on compassionate release grounds only:

> after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

The relevant Sentencing Commission policy statement is found in U.S.S.G. § 1B1.13. It provides that the Court may reduce the term of imprisonment only if three conditions are met:

(i)   extraordinary and compelling reasons warrant the reduction, *id.* § 1B1.13(1)(A);

(ii)  the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g), *id.* § 1B1.13(2); and

(iii) "the reduction is consistent with this policy statement. *id.* § 1B1.13(3).

The Application Notes describe the circumstances under which "extraordinary and compelling reasons exist." *Id.* § 1B1.13 Application Note 1. One of those is the defendant's medical condition:

> (A) Medical Condition of the Defendant.—
>
> . . .
>
> (ii)   The defendant is—
>
> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.* § 1B1.13 Application Note 1(A). Goode's motion is predicated on her medical condition, which she contends has deteriorated substantially since she was first incarcerated.

According to a Program Statement issued by the BOP after passage of the First Step Act, a defendant may be considered for a reduced sentence based on a his/her medical condition only if s/he

>   (i)   has an "incurable, progressive illness" or has "suffered a debilitating injury from which [he] will not recover;"
>
>   (ii)  is "[c]ompletely disabled, meaning the [defendant] cannot carry on any self-care and is being totally confined to a bed or chair'" or
>
>   (iii) is "[c]apable of only limited self-care and ... confined to a bed or chair more than 50% of waking hours."

U.S. Department of Justice, Federal Bureau of Prisons, Program Statement, OPI OGC/LCI, Number 5050.50, January 17, 2019, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g), at 5.

3

It is important to note that a defendant who meets all the criteria for compassionate release consideration listed above is not thereby automatically entitled to a sentence modification. She is simply eligible for a sentence modification. The court confronted with a compassionate release motion is still required to consider all the Section 3553(a) factors to the extent they are applicable, and may deny such a motion if, in its discretion, compassionate release is not warranted because Section 3553(a) factors override, in any particular case, what would otherwise be extraordinary and compelling circumstances.

<u>Goode's Request to the BOP for Compassionate Release</u>

In December 2018, Goode submitted a "Compassionate Release Request" to the BOP at FMC Carswell based on her medical conditions, which include what Goode has described as "end stage renal disease," "renal anemia," "hyperthyroidism," "hypertension," as "Stage Five renal failure." (Mot. at 2). On January 9, 2019, the BOP denied that request because "currently, you do not meet the criteria for a Reduction in Sentence based on Medical Circumstances – Terminal Medical Condition" noting, in particular, that Goode did not have a life expectancy of 18 months or less and was capable of independent living within the BOP facility. (Dkt. 489, Ex. A at 1). Goode filed an appeal of the denial, which was denied for substantially the same reasons by the Warden on February 20, 2019. (*Id.* at 2-3).

According to the medical director, Dr. Charles Langham, the request was denied because Goode does not meet BOP "terminal medical criteria." According to Dr Langham:

> I have reviewed Ms. Goode's Bureau of Prisons Electronic Medical Records. Ms. Goode has a medical history of hypertension, anemia, dependence on dialysis, and chronic lower back and knee pain. She currently undergoes dialysis treatment three times per week and is evaluated by a contract nephrologist every two weeks. Ms. Goode is presently responding well to dialysis treatment. Presently, Ms. Goode's life expectancy is greater than eighteen months and she does not have an end of life trajectory. Additionally, based on my review of the available records, there has not been a recommendation for Ms. Goode to undergo a kidney

> transplant. In the event that Ms. Goode were deemed a good candidate for a kidney transplant and an appropriate organ donor were identified, the BOP has procedures for consideration of organ transplantation outlined in the BOP's Program Statement 6031.04, Patient Care.
>
> At this time, based on my review of records, Ms. Goode does not meet the criteria of a terminal medical condition under the BOP's Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g).

(Letter from Charles Langham, M.D. dated October 21, 2019 (Govt. Exhibit A).

Goode appealed the facility's determination to the BOP Regional Director. The Regional Director denied the appeal noting:

> As the Warden explained, staff reviewed your case and determined you were inappropriate for RIS. Although you have serious medical conditions, your conditions do not meet terminal criteria, you independently perform activities of daily living, and you have no functional limitations.

(Letter from Eric D. Wilson, Acting Reginal Director, dated April 5, 2019).

Goode's Motion for Compassionate Release in the District Court

On September 5, 2019, Goode filed her first compassionate release motion with the court pursuant to 18 U.S.C. § 3582 and the First Step Act. (Dkt. 489). She claimed that "hypertension kidney disease [] has destroyed her kidney function and has left [her] in End Stage Organ Failure needing a kidney transplant." Goode says that she is in need of a transplant and "has siblings that are willing to donate a kidney" but that "FMC Carswell is not able to offer to the Defendant a kidney transplant." (*Id.* at 3-4). In a reply letter to the Court, Goode disputed Dr. Langham's suggestion that kidney transplant was not indicated:

> The reason that the specialist will not recommend a transplant for Ms. Goode is because the contract doctors that work for the Bureau of Prisons are not permitted to go outside the scope that the Bureau of Prisons has in place without the permission from Washington. If this contract doctor was seeing Ms. Goode in the real world he most certainly would have recommended a transplant to cure her disease when one came available.

5

> . . .
> [I have] been receiving dialysis treatments for the past 3 years. . . . [and] deteriorating more and more every day. Ms. Goode now spends 24 hours a day in a wheel chair because of bone issues in her knees and back. Ms. Goode is experiencing bone and muscle deterioration because her kidney disease causes weakening of the joints and bones because her body does not supply the calcium her bones need to keep them strong. This cause brittle and soft bones making her susceptible to broken hips and knees. When Ms. Goode arrived at FMC Carswell she was not in a wheel chair and will spend the rest of her life in a wheel chair until she can get a transplant. After a transplant Ms. Goode will have months if not years of rehabilitation to strengthen her bones and muscles so she may some day walk again. So when Dr. Langham in his letter states she is responding well to dialysis, I guess if you think that responding well from a wheel chair is responding well than I would think that is his opinion but not the opinion of the woman that when she arrived here could walk but is now confined to a wheel chair.

(ECF #492, Goode Reply Letter, dated November 5, 2019).

With respect to the Section 3553(a) factors, Goode claimed she "is a non-violent offender and has learned her lesson" adding that since sentencing she has "married a Pastor of her church and fully intends on following the laws of society and of the church." (*Id.* at 5).

In opposing the motion, the Government relied principally on Goode's BOP medical records and the representation of BOP physician, Charles Langham, that Goode did not meet the criteria for compassionate release based on her medical condition.

The Court agreed with the Government's position. While there was no denying Ms. Goode had significant medical issues, the Court determined that her condition at the time had not substantially diminished her ability to provide self-care within the environment of a correctional facility, and that she was responding well to BOP provided medical treatment. The "terminal" nature of Goode's condition was no different than it was when the Court imposed sentence–

6

she had been diagnosed with "end stage kidney disease" and was receiving dialysis.[2] Important to the Court's calculus in denying the motion was that I had already discounted Goode's sentence by more than eight years below the bottom of her Guidelines range, principally because of her poor renal health. The Court believed at the time that a further reduction in her already significantly reduced sentence would tend to undermine the sentencing goals set forth in Section 3553(a). I ultimately concluded that, "as long as the

---

[2] According to the presentence report prepared by the Probation Department, Goode was first diagnosed with kidney failure in 2015, or after her participation in the charge conduct began. (PSR ¶ 87.) Her sentencing submission included correspondence from a treating physician that described the condition as "hypertension complicated by Stage V Chronic Kidney Disease," and that due to her "extremely impaired Renal Function, she is approaching End Stage Renal Disease." (Ex. E to Sentencing Submission). As the sentencing date approached, Goode was in need of dialysis multiple times each week to maintain her kidney function. Indeed, sentencing was adjourned several times over nine months at defendant's request to accommodate her ongoing medical care. When Goode finally appeared for sentence, she pleaded with the Court to spare her a prison sentence: "I am trying to get a kidney. My family will give me one. They don't do it in the BOP." (Tr. 10). While I did not grant her request to completely avoid a term of imprisonment, I sentence her to a significantly lesser period of incarceration than I was inclined to do for someone with her level of culpability (Defendant was a career offender within the meaning of the U.S. Sentencing Guidelines and had an applicable Guidelines range of 151 to 188 months' imprisonment.). As I said at the time of sentence, many similarly situated co-defendants had received sentences of up to 120 months' imprisonment, "[y]our peculiar circumstance is that you have a disease that is fatal unless treated, treated properly and appropriately, and while I know that there are fine medical facilities run by the Bureau of Prisons, I am also aware of the fact that you will probably get better medical care out here than you would get in there." (Tr. 12-13). However, I ultimately concluded that:

> I can't see my way clear to saying you're done, time-served, I can't do it. The crime is too serious. What I am going to propose is sentencing you to a below- guidelines sentence and setting a very long surrender date, like maybe six months or a year, while we work out this kidney transplant thing, in the hope that we can have you off dialysis before you have to do time. I think that's in a world of really bad alternatives, I think that is the best alternative I can come up with. . . .
>
> I am under no illusion that giving a long surrender date in the hope you will be able to get a kidney transplant will end your medical problems. Transplants have rejection issues and they have all kinds of issues, and those issues are life-long and I recognize that. I do believe that the Bureau of Prisons is capable in its medical facilities of dealing with many of those issues, including dialysis if it has to be. If a transplant doesn't come through and it has to be, it is my hope that by setting a long surrender date, you will be able to ameliorate the impact of the health conditions.
>
> That said, it is my belief that Ms. Goode's time in prison will be more difficult than the time spent by other people because of her health issues and the fallout from them. For that reason, I consider it appropriate to impose a variance sentence.

(Tr. 15-16). I sentenced Goode to 48 months' imprisonment and allowed her to remain out an additional eight months. She never received a transplant. She surrendered and commenced her sentence in February 2018.

7

BOP is capable of caring for her medical needs, Goode should serve out the balance of her sentence."

### The Specter of COVID has Altered the Calculus

Goode's renewed application for compassionate release, presents new, extraordinary and compelling circumstances that the Court could not have anticipated when sentencing Ms. Goode or when denying her previous application for compassionate release: the COVID-19 Pandemic, the overwhelming surge of the virus in Texas, and the risk it poses to her debilitating chronic illnesses. Positions previously taken by the Government and the Court as to Ms. Goode's risk and health, as weighed against her criminal conduct, are no longer viable. No longer can it be argued in this case that the sentencing factors set forth at 18 U.S.C. §3553(a)—such as providing just punishment, avoiding unwarranted disparities, and promoting respect for the law—outweigh Goode's health concerns. When viewed now in the context of COVID-19, it can no longer be argued that Goode's medical condition does not present an extraordinary and compelling basis warranting her release. Moreover, it would be laughable now to argue that Goode would be safer in a Texas BOP medical facility than she would be at home in New York City. Ms. Goode is incarcerated at FMC Carswell in Fort Worth, Texas, the BOP facility with the second highest number of inmates diagnosed with COVID-19. *See* bop.gov/coronavirus (On July 21st, the BOP website reported the following COVID-19 statistics for FMC Carswell: 510 inmates and 3 staff members tested positive, 3 inmates had died, and 4 inmates had recovered, but, inexplicably, as of August 5, 2020, the BOP website reported that FMC Carswell has 150 inmates who have tested positive, 4 inmate

8

deaths, and 392 inmates who have "recovered" from COVID-19).[3] The abominable COVID-19 statistics at FMC Carswell suggests that the trust this Court once placed in the BOP to care for an inmate with Goode's complicated health conditions is no longer warranted.

BOP medical records suggest that Ms. Goode has become increasingly debilitated as a result of her kidney failure. This life-altering and life-threatening medical condition, diagnosed during the pendency of her case, has increased her fragility, necessitating her use of a wheelchair. She is at increased heightened risk in becoming infected with COVID-19, and, if infected by the virus, suffering a severe outcome. Justice no longer demands that she remain incarcerated in a BOP facility; never mind a BOP facility that has the second highest number of infected inmates.

Goode Has a Viable Release Plan

Ms. Goode has provided an appropriate release plan to serve the remainder of her sentence at home under conditions of supervised release. Upon her release, Ms. Goode will reside with her fiancé, Lionel Green, at 163 West 145th Street in Manhattan. Mr. Green has been employed for the past 35 years by Columbia Presbyterian Hospital in its food service department and is also a pastor. Mr. Green resides in a two-bedroom apartment, permitting Ms. Goode to isolate away from her husband for two weeks when she arrives. Ms. Goode would resume dialysis treatment (currently three times per week) at a community facility near her home. Medicaid would provide round trip transportation, although Mr. Greene will likely escort Ms. Goode home. According to the physician who will be treating Goode upon her release:

Ms. Goode will be able to resume her weekly hemodialysis treatments in a

---

[3] After dealing with numerous compassionate release motions over the last several months, I have learned that BOP statistical reporting for a particular facility does not always present a clear picture of, or necessarily comport with, the actual infection rate at that facility.

> community facility where patients are tested regularly for COVID-19 infection, and if found to be infected, are separated and treated at temporary hemodialysis unit if they do not warrant hospitalization. These precautions will not only limit Ms. Goode's potential exposure but provide for appropriate medical care in the event it is necessary.

Defense Memo dated August 7, 2020, Exhibit C, Declaration of Jordan G. Nestor, at ¶8.

### Conclusion

Ganeene Goode's sentence is reduced to time served, pursuant to 18 U.S.C. §3582(c)(1)(A)(i), as amended by the First Step Act, based on extraordinary and compelling reasons— her increased risk of (1) contracting COVID-19 while incarcerated at FMC Carswell, and (2) in light of her declining health, suffering a severe outcome should she contract the virus.

This constitutes the order of the Court.

Dated: August 10, 2020

_____
Colleen McMahon
Chief Judge

By ECF to Counsel

By First Class Mail:

Ganeene Goode, Registration No.: 39456-054
FMC CARSWELL
FEDERAL MEDICAL CENTER
P.O. BOX 27137
FORT WORTH, TX 76127